IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

MICHELE MARIE STURGEON,
Grievant Below, Petitioner

v.) No. 25-ICA-80      (Grievance Bd. Case No. 2024-0587-CONS)

**FILED**

**October 24, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

WEST VIRGINIA DEPARTMENT
OF HEALTH, BUREAU FOR PUBLIC HEALTH,
Respondent Below, Respondent

**MEMORANDUM DECISION**

Petitioner Michele Marie Sturgeon appeals the January 28, 2025, final decision from the West Virginia Public Employees Grievance Board's administrative law judge ("ALJ"), which determined that Respondent West Virginia Department of Health, Bureau for Public Health (the "Department") proved that written reprimand and termination were justified. The Department filed a response.[1] Ms. Sturgeon did not file a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Grievance Board's decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Sturgeon was initially employed in the WISEWOMAN program as an Epidemiologist II and was responsible for the evaluation of the program. In September of 2020, after the first nine months of her duties, the division director determined that there had been "zero progress" on the program evaluation which the division director attributed to "lack of effort." The division director detailed to Ms. Sturgeon issues with her tardiness and inappropriate requests, and asked Ms. Sturgeon to respond by the next day. The next day Ms. Sturgeon texted that she was sick and would be late, but by the afternoon she had still not arrived at work or communicated with the division director as required. Ms. Sturgeon was counseled and placed on an attendance improvement period by her supervisor Melissa Baker because she had been absent from work twenty-four times during a fifty-one-day work period.

Approximately six months later, Ms. Sturgeon voluntarily transferred to the Childhood Lead Poisoning Prevention Program and Newborn Hearing Screening Program

---

[1] Ms. Sturgeon is self-represented. The Department is represented by Attorney General John B. McCuskey, Esq., and Assistant Attorney General Gail V. Lipscomb, Esq.

1

which included a voluntary demotion from an Epidemiologist II down to an Epidemiologist I. Ms. Baker remained her supervisor, but Ms. Sturgeon's new role was data management. Among other responsibilities, she monitored databases for accuracy and timeliness so the Department could immediately identify and report to the Centers for Disease Control any lab results for children who showed elevated lead levels in their blood tests. Because half of the lab reporting is electronic and half is manual, any records with potential issues are "held" to be reviewed and confirmed manually by Ms. Sturgeon.

Ms. Sturgeon's poor work performance was identified by the new division director. In November 2022, Sharon Hill was hired to fill the vacant division director position becoming Ms. Sturgeon's supervisor, and Matthew Christiansen, M.D., M.P.H., was appointed as the new State Health Officer and Commissioner for the Bureau for Public Health. Both Director Hill and Dr. Christiansen had concerns about data reliability and standardization procedures. Within two weeks of Director Hill assuming her position, she counseled Ms. Sturgeon on her tardiness and leaving work early without any communication. A month later, on December 8, 2022, Director Hill again verbally reprimanded Ms. Sturgeon for failing to meet deadlines on two priority assignments as directed. Director Hill's end of year evaluation of Ms. Sturgeon for 2022, also known as an EPA 3, identified several categories where Ms. Sturgeon was deemed as meeting expectations, but scored Ms. Sturgeon as needing improvement in dependability and teamwork collaboration. Ms. Sturgeon refused to sign the EPA 3, stating she had met all her deliverables on time over the past three years as per her former supervisor, referring to her work in the previous WISEWOMAN division that ended in early 2021.

Director Hill continued to experience issues with Ms. Sturgeon's performance and attendance, so she put Ms. Sturgeon on an attendance and performance improvement plan in January 2023 for a six-month period (ending July 2023). Director Hill's review discovered that Ms. Sturgeon had been on unscheduled leave 10% of the time, exhausted her sick leave, and been absent from work without authorization nine times. Regarding performance, Director Hill identified failures to meet deadlines, failure to follow Director Hill's directives, failure to attend meetings, and failure to provide data in the requested format.

Ms. Sturgeon's performance began declining again by March 2023, with issues like poor work performance and behavior and a persistent argumentative demeanor toward Director Hill. These performance issues included Ms. Sturgeon's failure to meet a critical deadline for information on a media inquiry, resulting in Director Hill performing the necessary submission while on vacation; numerous failures to report what time she had reported to work; and inappropriate aggressive behavior toward Director Hill while discussing Ms. Sturgeon's refusal to sign her performance evaluations. Ms. Sturgeon also ignored Director Hill's directives by including in reports certain Medicaid numbers that Director Hill explicitly told her not to include, and failing to get authorization to submit reports. Director Hill issued a written reprimand dated March 28, 2023, that included

twelve incidents of misconduct and deficiencies. Ms. Sturgeon filed a grievance regarding the written reprimand.

Director Hill and Director Jim Jeffries offered to transfer Ms. Sturgeon's supervision to another supervisor, but Ms. Sturgeon declined. Ms. Sturgeon continued to perform poorly following the written reprimand. The culmination of Ms. Sturgeon's continued poor performance and insubordination ended with two final incidents resulting in Ms. Sturgeon's dismissal. In early October 2023, Steven Maley and Ms. Sturgeon spoke to a reporter several times and Ms. Sturgeon disclosed to co-worker Cori Ice that she had talked to this reporter several times. On October 5, 2023, another co-worker Bin Schmitz reported that she received a text from a reporter who claimed that Ms. Sturgeon had given the reporter Ms. Schmitz's name as someone he should contact. Ms. Schmitz did not give permission to Ms. Sturgeon to share her contact number and was extremely upset by these events. On October 11, 2023, another co-worker Paul Ice reported that he also was contacted by a reporter who stated that a few epidemiologists at the Department had asked the reporter to investigate a matter. Mr. Ice was both surprised and upset to be contacted on his personal cell. After the reporter attempted contact with Bin Schmitz and Paul Ice, the reporter filed numerous Freedom of Information Act requests.

On October 17, 2023, Ms. Sturgeon was present in a meeting where Director Hill made clear that faxed copies of certain lab reports were important for data validation, that most providers did not have software capabilities to make electronic reports, and scanned faxes from the two biggest laboratories, LabCorp and Quest, were to continue. The next day, Ms. Sturgeon made the decision to terminate fax reports from LabCorp without consulting Director Hill or copying Director Hill on her email to LabCorp. Upon learning of Ms. Sturgeon's direct insubordination, Director Hill was forced to request LabCorp resume the faxed reports causing a delay in reporting for over a month.

After a heated predetermination conference meeting on November 14, 2023, Dr. Christiansen dismissed Ms. Sturgeon from employment by letter dated November 30, 2023, citing the history of performance failures, improvement plans, counseling discussion and coaching, and verbal and written reprimands as a backdrop to the last two incidents of insubordination involving the LabCorp faxes and failure to follow the Department's media communications policy.

In its January 28, 2025, final decision, the ALJ found that the Department had proven Ms. Sturgeon's misconduct and concluded that the written reprimands and ultimate termination were justified for the multiple violations of policy, insubordination, and failure to adequately perform her duties. This appeal of the ALJ's January 28, 2025, final decision followed.

Our governing standard of review for a contested case from the Grievance Board is as follows:

3

The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the agency;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

W. Va. Code § 29A-5-4(g) (2021) (specifying the standard for appellate review of administrative appeal). "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With these standards in mind, we turn to Ms. Sturgeon's assignments of error.

On appeal, Ms. Sturgeon raises eleven assignments of error, which we will consolidate and restate for clarity. *See Tudor's Biscuit World of Am. v. Critchley,* 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error); *Jacquelyn F. v. Andrea R.*, No. 16-0585, 2017 WL 2608425, at *1 n.2 (W. Va. June 16, 2017) (memorandum decision) (restating assignments of error where they involve clearly related issues). Those issues are whether the ALJ erred in what evidence it considered, how it assessed the evidence, and its witness credibility determinations and whether Ms. Sturgeon was improperly denied the assistance of a union representative at the ALJ hearing.

The majority of Ms. Sturgeon's arguments on appeal relate to the first issue for decision. Ms. Sturgeon asserts that the ALJ erred in failing to properly consider evidence she presented, in finding the Department's witnesses more credible than hers, and in improperly assessing the evidence to determine that the Department proved that termination was justified and that Ms. Sturgeon failed to prove harassment, hostile work environment, functional demotion, retaliation, or that mitigation was warranted. We disagree.

It is clear from the ALJ's detailed order that it carefully reviewed the evidence presented to it over the course of several lengthy hearings and determined which evidence was salient to the issues being considered and the weight such evidence should be afforded.

4

Though Ms. Sturgeon disagrees with the ALJ's interpretation of certain evidence, resolution of conflicting evidence, and the inferences drawn therefrom, after a review of the record, we cannot conclude that the ALJ's findings of fact and conclusions of law are in violation of constitutional or statutory provisions; in excess of the statutory authority or jurisdiction of the agency; made upon unlawful procedures; affected by other error of law; clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The last issue for decision is Ms. Sturgeon's claim that as a person with disabilities, her right to a fair hearing with a union representative was denied. Again, we disagree. Ms. Sturgeon's previous union representative was informed that he was statutorily limited to serve in no more than five grievances per year and could not serve for Ms. Sturgeon at the ALJ hearing. She was free to secure another union representative for the hearing but did not.

For the foregoing reasons, we affirm the Grievance Board's January 28, 2025, decision.

Affirmed.

**ISSUED:** October 24, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White